## IN THE COURT OF APPEALS OF IOWA

No. 3-1190 / 13-1728
Filed February 5, 2014

**IN THE INTEREST OF J.N., S.N., E.N., C.N., B.N., and H.N.,**
**Minor Children,**

**M.N., Father,**
　　　　Appellant,

**A.N., Mother,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Woodbury County, Mary Timko,

Associate Juvenile Judge.


　　　　A mother and father appeal separately from the order terminating their

parental rights.  **AFFIRMED.**


　　　　Patrick H. Tott, Sioux City, for appellant father.

　　　　Angela Kayl of Kayl Law Office, Sioux City, for appellant mother.

　　　　Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, Patrick Jennings, County Attorney, and J. Aaron Kirsch,

Assistant County Attorney, for appellee State.

　　　　Joseph Kertels of Juvenile Law Center, Sioux City, for minor children.


　　　　Considered by Mullins, P.J., McDonald, J., and Mahan, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MAHAN, S.J.**

A mother and father separately appeal the termination of their parental rights to their six children. They each contend the State failed to prove the grounds for termination by clear and convincing evidence, termination is not in the children's best interests, and the State failed to make reasonable efforts to reunite them with the children. We review these claims de novo. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

The family came to the attention of the Iowa Department of Human Services (DHS) in August 2011 following allegations the father sexually abused one of the children. The children were placed in foster care that same month.[1] The court adjudicated the children to be children in need of assistance (CINA) in October 2011 based on "a significant pattern of lack of supervision for the children, especially those with the most special needs" and the house being "unclean to the point of being an unsafe home in which to reside."

Despite numerous reports of possible abuse and neglect, the parents denied the allegations made against them. Extensive services were offered to the parents, who did not request additional services. In spite of these services, the DHS found the parents failed to demonstrate they had made the changes necessary to return the children to their custody. The State filed a petition to terminate the parents' rights in February 2013, and following a hearing in July

---

[1] Five of the children were returned to the mother's care in September 2011 but were removed the following month after the father assaulted one of the children while living at the home without the DHS's permission. The children have not returned to the home since that time.

2013, the juvenile court terminated both the mother's and the father's parental rights to all six children.

**I. Grounds for Termination.**

Both parents challenge the evidence supporting the termination of their respective parental rights.  The juvenile court terminated each parent's rights to each of the children pursuant to Iowa Code sections 232.116(1)(d), (f), and (i) (2013).  We need only find grounds to terminate under one of the subsections cited by the juvenile court to affirm.  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  Termination is appropriate under section 232.116(1)(d) where the State proves by clear and convincing evidence:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d).  The parents do not dispute that the criteria of section 232.116(1)(d)(1) has been shown.  They instead argue the circumstances that led to the CINA adjudication no longer exist.

We find clear and convincing evidence supports terminating both the mother's and the father's parental rights under section 232.116(1)(d).  Although the parents argue their home is now clean and habitable, the condition of the home was only one basis for the CINA adjudication.  The credible evidence shows these children have been subjected to physical abuse and neglect while in

their parents' care. While the parents argue they have assured the children this abuse will not continue in the future, the record shows they denied the allegations of abuse being made against them. Because they failed to take responsibility for their actions and adequately participate in services to address their parenting deficiencies, the circumstances that led to the CINA adjudication continue to exist. Even though we have determined we need only find grounds to terminate under section 232.116(1)(d), we also conclude there is clear and convincing evidence to terminate parental rights under sections 232.116(1)(f) and 232.116(1)(i). These children simply cannot be returned to the custody of their parents.

**II. Best Interests.**

The mother and the father also contend termination is not in the children's best interests. They argue the children are significantly bonded to them and to each other and that termination will harm the children by severing those bonds. They also argue their parental rights should not be terminated because some of the children are not adoptable. They ask that even if the children are not returned to their care, that they should be placed in another planned permanent living arrangement so the family relationships can be maintained.

In making the best-interests determination, we give primary consideration to the children's safety, the best placement for furthering the children's long-term nurturing and growth, and the children's physical, mental, and emotional conditions and needs. *See* Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We find termination is in the children's best interests. The two oldest children have no desire to return to the parents' care. The other four

children are more conflicted about the prospect of termination, though all four are settled in their current placements, feel safe, and are thriving in comparison to the condition they were in following years of abuse and neglect. The children are finally receiving the stability and safety the parents were unable to provide. The evidence indicates that if the children were returned to the parents' care, they would continue to suffer as they did previously. With the specter of abuse and neglect hanging over a future in which they are returned to the parents' care, termination is in the children's best interests. We further find it is not the children's best interests to preserve the parent-child relationship while the children remain in long-term foster care; the risk of harm these parents pose if the parent-child relationship is continued is simply too great.

**III. Reasonable Efforts.**

Finally, the mother and the father both contend the State failed to make reasonable efforts to reunite them with the children. The State must show reasonable efforts as part of its ultimate proof the children cannot be safely returned to the parents' care, but it is not viewed as a strict substantive requirement of termination. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Rather, the scope of the DHS's efforts to reunify the parents and children after removal impacts the State's burden of proving the elements of termination that required reunification efforts. *Id.*

Upon our de novo review, we find both parents were offered services, but that they failed to adequately follow through with those services and make lifestyle changes that would assure the children's safety. The parents cannot identify any services they were not offered that would have changed the outcome

of this case. In order to make the changes necessary to allow them to safely parent the children, the mother and the father needed to acknowledge their parenting deficiencies and put forth a genuine effort to improve by participating in the services already offered. They failed to do so. Accordingly, we affirm.

**AFFIRMED.**